IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TWANETTE J.,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 21 C 5694 |
| v. | ) |
| | ) Magistrate Judge Beth W. Jantz |
| KILOLO KIJAKAZI, Acting | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**MEMORANDUM OPINION AND ORDER**

This action was brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security denying Plaintiff Twanette J.'s application for Disability Insurance Benefits ("DIB"). The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons that follow, Plaintiff's motion for summary judgment [Dkt. 16, Pl.'s Mot.] is granted, and the Commissioner's cross-motion for summary judgment [Dkt. 17, Def.'s Mot.] is denied. The Commissioner's decision is reversed, and this matter is remanded for further proceedings consistent with this Memorandum Opinion and Order.

---

[1] In accordance with Internal Operating Procedure 22, Privacy in Social Security Opinions, the Court refers to Plaintiff by her first name and the first initial of her last name.

# BACKGROUND

## I. Procedural History

On April 21, 2015, Plaintiff filed a claim for DIB, alleging disability since December 3, 2014, due to a back injury, arthritis, diabetes, high blood pressure, and depression. [R. 212-13, 237.] Plaintiff's claim was denied at all administrative levels, and Plaintiff appealed the denial to this Court, which reversed and remanded for further proceedings. [R. 1-3, 17-29, 114, 125, 872-86.] *See Twanette J. v. Saul*, No. 19 C 201, 2020 WL 6287401 (N.D. Ill. Oct. 27, 2020). In the interim, Plaintiff had filed a new claim for DIB in November 2019. [R. 901.] On remand, the Appeals Council consolidated Plaintiff's claims and remanded the matter to the Administrative Law Judge ("ALJ") for further proceedings. [R. 901.] The ALJ held a new hearing by telephone on May 6, 2021. [R. 771-823.] Plaintiff personally appeared by telephone and testified at the hearing and was represented by counsel. [R. 773, 786-809.] Vocational expert ("VE") Dennis W. Gustafson also testified at the hearing. [R. 809-21.] On June 29, 2021, the ALJ again denied Plaintiff's claim for benefits, finding her not disabled under the Social Security Act. [R. 761.] The Social Security Administration Appeals Council then denied Plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner and, therefore, reviewable by the District Court under 42 U.S.C. § 405(g). *Cullinan v. Berryhill*, 878 F.3d 598, 603 (7th Cir. 2017).

## II. The ALJ's Decision

The ALJ analyzed Plaintiff's claim in accordance with the Social Security Administration's five-step sequential evaluation process. [R. 745-61.] The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since December 3, 2014, the alleged onset date, through December 31, 2019, the last insured date. [R. 747-48.] At step two,

the ALJ concluded that Plaintiff had the following severe impairments: fibromyalgia, degenerative disc disease, diabetes mellitus, affective disorders, and anxiety disorders. [R. 748.] The ALJ concluded at step three that Plaintiff's impairments, alone or in combination, did not meet or medically equal one of the Social Security Administration's listings of impairments (a "Listing"). [R. 748-50.] Before step four, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform light work with the following additional limitations: she could only stand or walk for 4 hours in an 8-hour workday; she could only occasionally climb ladders, ropes, or scaffolds and frequently climb ramps or stairs; she could frequently stoop, kneel, crouch, and crawl; she could frequently use her lower extremities for foot controls; she could not have sustained interaction with the public; and she "would have worked best in a non-collaborative setting with no hourly production quotas." [R. 750-60.] At step four, the ALJ concluded that Plaintiff would not be able to perform her past relevant work. [R. 760.] At step five, the ALJ concluded that based upon the VE's testimony and Plaintiff's age, education, work experience, and RFC, Plaintiff could perform jobs existing in significant numbers in the national economy, leading to a finding that she is not disabled under the Social Security Act. [R. 760-61.]

## DISCUSSION

**I.     Judicial Review**

Under the Social Security Act, a person is disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine disability within the meaning of the Social Security Act, the ALJ conducts a five-step

3

inquiry, asking whether: (1) the claimant has performed any substantial gainful activity during the period for which she claims disability; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any listed impairment; (4) the claimant retains the RFC to perform her past relevant work; and (5) the claimant is able to perform any other work existing in significant numbers in the national economy.  20 C.F.R. § 416.920(a).  "A finding of disability requires an affirmative answer at either step three or step five."  *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005).  "The claimant bears the burden of proof at steps one through four, after which at step five the burden shifts to the Commissioner." *Id*.

Judicial review of the ALJ's decision is limited to determining whether it adequately discusses the issues and is based upon substantial evidence and the proper legal criteria.  *Villano v. Astrue*, 556 F.3d 558, 561-62 (7th Cir. 2009).  "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotation omitted).  "To determine whether substantial evidence exists, the court reviews the record as a whole but does not attempt to substitute its judgment for the ALJ's by reweighing the evidence, resolving material conflicts, or reconsidering facts or the credibility of witnesses."  *Beardsley v. Colvin*, 758 F.3d 834, 836-37 (7th Cir. 2014).  While this review is deferential, "it is not intended to be a rubber-stamp" on the ALJ's decision.  *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018).  The Court will reverse the ALJ's finding "if it is not supported by substantial evidence or if it is the result of an error of law."  *Id.*, at 327.

The ALJ also has a basic obligation to develop a full and fair record, and to "build an accurate and logical bridge between the evidence and the result to afford the claimant meaningful

judicial review of the administrative findings." *Beardsley*, 758 F.3d at 837; *see also Jarnutowski v. Kijakazi*, 48 F.4th 769, 773 (7th Cir. 2022). Although the ALJ is not required to mention every piece of evidence in the record, the ALJ's analysis "must provide some glimpse into the reasoning behind her decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001); *accord Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). The ALJ "must explain [the ALJ's] analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Scrogham v. Colvin*, 765 F.3d 685, 695 (7th Cir. 2014) (quoting *Briscoe*, 425 F.3d at 351).

## II. Analysis

Plaintiff makes four main arguments challenging the ALJ's decision: (1) the ALJ erred in not considering that Plaintiff was in a borderline age category and not applying the older age category; (2) the ALJ erred in determining Plaintiff's mental RFC, especially in accounting for her moderate limitations in concentration, persistence, or pace ("CPP") into the RFC; (3) the ALJ erred in weighing the medical opinion evidence; and (4) the ALJ erred in evaluating Plaintiff's subjective symptom reports. [Dkt. 16, Pl.'s Mem. at 3-16.] After reviewing the record and the briefs submitted by the parties, this Court concludes that the ALJ erred by not properly accounting for Plaintiff's CPP limitations in her mental RFC. Because this failure alone warrants remand, the Court need not reach Plaintiff's additional arguments.

The Court agrees with Plaintiff that the ALJ improperly assessed Plaintiff's mental RFC. The ALJ found at step three that Plaintiff had moderate limitations in social functioning and moderate limitations in concentration, persistence, or maintaining pace. [R. 749.] As to Plaintiff's social functioning, the ALJ noted that Plaintiff testified that her mental impairments made her feel angry, but that she did not have any issues getting along with family, friends, or

5

neighbors, although she did not have much of a social life. [*Id.*] Additionally, the ALJ stated that Plaintiff's counseling records noted that she had no issues getting along with her counselor but that she reported issues with her interpersonal relationships. [*Id.*] The ALJ thus concluded that the record was consistent with Plaintiff having a moderate limitation in social functioning. [*Id.*]

With respect to Plaintiff's ability to concentrate, persist, or maintain pace, the ALJ identified Plaintiff's subjective report that she could not pay attention for a long time and that she did not finish things that she started. [*Id.*] The ALJ also pointed out that Plaintiff's attention and concentration were reported as "poor" in counseling sessions in late 2015 and the first half of 2016, but in the latter half of 2016 through December 2018, Plaintiff's attention and concentration were reported as "fair" and her mood improved at times with intact mental functioning in all other areas of her mental status examinations. [*Id.*] Finally, the ALJ noted that none of Plaintiff's treatment providers for her physical impairments had reported that her attention or concentration was problematic while treating her. [*Id.*] Given the record evidence, the ALJ concluded that a moderate limitation in CPP was warranted. [R. 749-50.]

To account for all of Plaintiff's "mental health symptoms" in the RFC, the ALJ limited Plaintiff to no sustained interaction with the public and work in a non-collaborative setting with no hourly production quotas. [R. 750.] Later in her decision, the ALJ noted that the RFC "accounted for [Plaintiff's] reports of anger and mood abnormalities by limiting her to work with no sustained interaction with the public and work that was not perform[ed] in collaboration with others as well as work with no hourly production quotas through her date last insured." [R. 760.]

"The ALJ must explicitly account for all a claimant's limitations in her hypothetical [to the VE], including limitations in concentration, persistence, or pace, unless the vocational expert

6

has independently reviewed the medical record." *DeCamp v. Berryhill*, 916 F.3d 671, 675 (7th Cir. 2019). "Though an RFC assessment need not recite the precise phrase 'concentration, persistence, or pace,' any alternative phrasing must clearly exclude those tasks that someone with the claimant's limitations could not perform." *Paul v. Berryhill*, 760 F. App'x 460, 465 (7th Cir. 2019) (citing *Moreno v. Berryhill*, 882 F.3d 722, 739 (7th Cir. 2018)). And the Seventh Circuit has explained that "there is no basis to suggest that eliminating jobs with strict production quotas or a fast pace may serve as a proxy for including a moderate limitation on concentration, persistence, and pace." *DeCamp*, 916 F.3d at 675–76; *see also O'Connor-Spinner v. Colvin*, 832 F. 3d 690, 698 (7th Cir. 2016). In some circumstances, however, alternatively phrased limitations can account for CPP difficulties if the record indicates that the limitations address the underlying symptoms. *Christopher G. v. Kijakazi*, No. 19 CV 5046, 2022 WL 1989119, at *4 (N.D. Ill. June 6, 2022) (collecting cases). This includes instances where a medical opinion adequately translates a finding of moderate CPP limitations into an RFC that accounts for a claimant's specific impairments. *See, e.g., Pavlicek v. Saul*, 994 F.3d 777, 783 (7th Cir. 2021) (affirming where agency consultants "translated" moderate CPP checklist ratings into an RFC that claimant "could carry out simple instructions and make simple decisions with no significant limitation"); *Varga v. Colvin*, 794 F.3d 809, 816 (7th Cir. 2015) ("True, in some cases, an ALJ may rely on a doctor's narrative RFC, rather than the checkboxes, where that narrative adequately encapsulates and translates those worksheet observations."); *Morrison v. Saul*, 806 F. App'x 469, 474 (7th Cir. 2020) ("The ALJ drew this restriction from the opinion of the medical expert, Dr. Rozenfeld, which is a permissible way of "translating" medical evidence into work-related restrictions."). "The question to be answered in every case is whether the ALJ has adequately explained, with support from the medical record," how the identified restrictions in

7

the RFC address "the claimant's specific concentration, persistence, or pace limitations." *Christopher G.*, 2022 WL 1989119, at *4; *see also Martin v. Saul*, 950 F.3d 369, 374 (7th Cir. 2020) ("What we do require—and our recent precedent makes plain—is that the ALJ must account for the 'totality of a claimant's limitations' in determining the proper RFC.").

In this case, the ALJ did not adequately support the restrictions identified to account for Plaintiff's moderate CPP limitations. The ALJ limited Plaintiff to no sustained interaction with the public and work in a "non-collaborative setting with no hourly production quotas" to accommodate Plaintiff's "mental health symptoms." [R. 750.] But the ALJ neither relied on a medical opinion's translation of Plaintiff's moderate CPP limitations into an RFC, nor provided a meaningful, reasoned explanation for why the particular restrictions she identified in the RFC sufficiently accounted for Plaintiff's moderate CPP limitations.

First, the ALJ did not credit any medical opinion in finding that Plaintiff was moderately limited in CPP. The ALJ found that the opinions of the three state agency psychiatric consultants—who concluded that Plaintiff's mental-health impairments were not severe (and accordingly did not suggest any CPP limitations)—warranted "little weight" because they did not examine Plaintiff and the medical evidence indicated that Plaintiff's mental impairments did result in functional limitations. [R. 756; *see* R. 109, 120, 447.] Specifically, to contradict their opinions, the ALJ pointed to Plaintiff's "counseling notes from early 2016[, which] showed the claimant's attention and concentration were poor, and while subsequent exams showed improvement in her attention and concentration, the notes also showed the claimant continued to present with symptoms of anxiety and depression." [R. 756.] But the ALJ also afforded "little weight" to the opinion of Plaintiff's examining psychologist, Dr. Kelly Hird, who opined in July 2017 that Plaintiff had marked limitations in CPP. [R. 757-58; *see* R. 611.] With respect to

the CPP limitations, the ALJ concluded that Dr. Hird's opinion was inconsistent with the medical evidence because "[Plaintiff's] exams from counseling from mid-2016 through December 2018 showed her attention and concentration and attention were noted as fair with intact mental functioning in all other areas of her mental status exam." [R. 758.] The ALJ thus did not draw the RFC limitation—to work in a non-collaborative setting with no hourly production quotas—from any of the opinions in the record.

Nor did the ALJ identify any other evidence of record that suggests that the limitations she identified address "the claimant's specific concentration, persistence, or pace limitations." *Christopher G.*, 2022 WL 1989119, at *4. While the ALJ included social limitations in the RFC to address Plaintiff's difficulties interacting with others, the ALJ did not find (and the record did not support) that Plaintiff's difficulties with concentration, persistence, and pace only arose when Plaintiff was forced to work at a certain pace or was around other people. *Cf. Jozefyk v. Berryhill*, 923 F.3d 492, 498 (7th Cir. 2019) (affirming limitation to simple, routine tasks with additional social restriction where claimant's "impairments surface[d] only when he is with other people or in a crowd"). Although the ALJ noted that the restrictions included in the RFC accounted for Plaintiff's CPP difficulties, the ALJ did not explain why that was the case, or identify which records suggested that Plaintiff's ability to concentrate or persist or maintain pace were related to the pace of the work or her social limitations. Indeed, the ALJ pointed to evidence that showed Plaintiff had issues with attention and concentration, not just pace, and that those issues arose not just in social settings. For instance, at step three, the ALJ relied on the following (mixed) reports about Plaintiff's attention and concentration in the record to find that she had moderate CPP limitations: (1) Plaintiff's own reports that she had difficulty paying attention for a long time and that she did not finish things she started; (2) counseling treatment

9

notes reporting Plaintiff's attention and concentration as "poor" in counseling sessions in late 2015 and the first half of 2016, but then reporting them as "fair" in the latter half of 2016 through December 2018; and (3) the lack of notes from Plaintiff's doctors who treated her physical impairments about deficits in Plaintiff's attention and concentration. [R. 749.] But the ALJ never explained how these mixed reports concerning Plaintiff's attention and concentration warranted a moderate limitation in CPP, nor how they would be accommodated in the RFC's restrictions on collaborative work and no hourly production quotas. At the end of the ALJ's decision, the ALJ explicitly stated that the RFC limitations on interactions with the public, no collaboration with others, and no hourly production quotas accounted for Plaintiff's "reports of anger and mood abnormalities," but made no mention of Plaintiff's attention and concentration issues. [R. 760.]

Further, although the ALJ did not discuss it at step three, she recognized later in her decision that Plaintiff often presented with depressed or anxious mood, which improved at times in the latter half of 2016 through December 2018. [R. 755-56.] As explained above, the ALJ seemingly accounted for these "mood abnormalities" with the RFC limitations on interactions with the public, no collaboration with others, and no hourly production quotas. [R. 760.] But again, the ALJ did not explain why any of those limitations were tailored to accommodate Plaintiff's depressed or anxious mood, nor is it clear from the record. In short, the evidence that the ALJ identified as supporting the RFC's CPP limitations does not suggest that Plaintiff's CPP limitations arise only with interacting with the public, collaborative settings, or hourly production quotas, which is what the mental RFC limitations addressed.

Instead, the ALJ appeared to engage in the same logical leap that the Seventh Circuit has indicated is impermissible—the ALJ assumed, without a link to the record evidence, that a

restriction to non-collaborative work with no hourly production quotas would account for Plaintiff's moderate CPP limitations. *See, e.g., DeCamp*, 916 F.3d at 676 ("[T]here is no basis to suggest that eliminating jobs with strict production quotas or a fast pace may serve as a proxy for including a moderate limitation on concentration, persistence, and pace."); *Yurt v. Colvin*, 758 F.3d 850, 858–59 (7th Cir. 2014) ("[W]e have repeatedly rejected the notion that a hypothetical like the one here confining the claimant to simple, routine tasks and limited interactions with others adequately captures temperamental deficiencies and limitations in concentration, persistence, and pace."). The ALJ thus failed to build an accurate and logical bridge between the record and Plaintiff's mental RFC, and failed to properly account for the moderate CPP limitations she found at step three in the RFC. Accordingly, remand is warranted on this basis. *See, e.g., Joseph D. v. Saul*, 20 C 2827, 2021 WL 2136357, at *5-6 (N.D. Ill. May 26, 2021) (remanding where the ALJ did not adequately explain how the adopted limitations accounted for moderate CPP limitations); *Dawn W. v. Berryhill*, 17 C 0190, 2019 WL 2085196, at *3 (N.D. Ill. May 13, 2019) (same); *cf. Martin*, 950 F.3d at 373 (affirming where ALJ adequately tailored RFC to account for Plaintiff's moderate CPP limitations).

Because the ALJ's failure to properly assess Plaintiff's mental RFC on its own warrants remand, the Court need not evaluate the remaining issues identified by the Plaintiff. On remand, however, the Administration should not construe the Court's silence on the remaining issues as an indication that the ALJ's initial adjudication was appropriate or not with respect to those issues.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment [16] is granted, and the Commissioner's motion for summary judgment [17] is denied. The Commissioner's decision

is reversed, and this matter is remanded for further proceedings consistent with this Memorandum Opinion and Order.

**SO ORDERED.**

Date: 3/27/23

_____
BETH W. JANTZ
United States Magistrate Judge

12